UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUSTIN RIVERA,<br><br>Petitioner,<br><br>-v-<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 19 Cr. 131 (PAE)<br>25 Civ. 10823 (PAE)<br><br><u>OPINION & ORDER</u> |

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion by defendant Justin Rivera for relief pursuant to 28 U.S.C. § 2255. On June 11, 2021, Rivera was convicted of a single charge of conspiracy to commit sex trafficking by force, fraud, and coercion, in violation of 18 U.S.C. § 1594(c). Dkt. 842.[1] On October 11, 2022, the Court sentenced Rivera principally to a sentence of 252 months imprisonment. Dkt. 970. On June 3, 2024, the Second Circuit unanimously affirmed Rivera's conviction and sentence. *See* Dkt. 1031.

In his § 2255 motion, Rivera principally claims ineffective assistance on the part of his trial-counsel team, led by Anthony Cecutti, Esq., and by his appellate counsel, Peter Tomao, Esq. He also makes a generalized claim of unspecified trial errors. For the reasons that follow, the Court denies Rivera's motion as meritless.

[1] Unless otherwise noted, docket citations refer to 19 Cr. 131 (PAE).

## I. Background to Rivera's § 2255 Motion[2]

### A. Pretrial Proceedings

On February 26, 2019, Rivera was charged in a one-count Indictment with violating 18 U.S.C. § 1594(c). The charge arose from conduct in 2015, when Rivera and his co-defendants squatted at a house in Bohemia, New York, and engaged in the sex trafficking of multiple women at the house.

Rivera was arrested on April 11, 2019. He was initially represented by Susan Walsh, Esq., and Lisa Scolari, Esq., who were appointed pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A (the "CJA"). On June 24, 2020, the Court granted Rivera's motion to relieve Walsh and Scolari. On July 14, 2020, the Court appointed Cecutti as counsel pursuant to the CJA. Cecutti represented Rivera before and during trial, and through sentencing, assisted by CJA attorneys Jennifer Louis-Jeune, Esq., and Anna Sideris, Esq.

### B. Trial

Rivera's jury trial began on June 2, 2021, and the jury returned its guilty verdict on June 11, 2021. The evidence at trial focused on a period in 2015 and on two sex-trafficking victims: Daija Perez, who was predominantly trafficked by Randall, and Natalie Rodriguez, who was predominantly trafficked by Rivera's friend and co-conspirator, Lorenzo Randall. The trial overwhelmingly showed that each woman had been trafficked by means of violence, threats of

---

[2] The background facts have been detailed in the Court's 18-page decision of November 3, 2021, denying Rivera's post-trial motions under Federal Rules of Criminal Procedure 29 and 33, *see* Dkt. 926 ("Rules 29/33 Decision"); (2) the Presentence Report, issued July 19, 2022, Dkt. 951; (3) the Government's October 4, 2022 sentencing letter, Dkt. 966; (4) the Court's remarks at Rivera's sentencing, Dkt. 978; (5) the Government's brief on appeal, *United States v. Rivera*, No. 22-2780 (2d Cir. Sep. 29, 2023), Dkt. 82; and (6) the Second Circuit's decision on appeal, the mandate of which issued on August 30, 2024, Dkt. 1031. The account here draws on those rulings and is based upon the citations therein to the trial record. The citations herein are limited to points directly relevant to Rivera's ineffective-assistance claim.

violence, coercion and fraud; and that a conspiracy existed among Rivera and Randall to traffic each woman. The evidence centered on the extended testimony of Perez and Rodriguez, and the testimony of Perez's mother, as corroborated by contemporaneous text messages, social media posts, and recorded phone calls. There was also testimony from an expert psychologist on trauma-bonding in the context of relationships between sex-traffickers and their victims. Although to sustain the conspiracy count, it was necessary only that there be sufficient evidence of a conspiracy including Randall to sex-traffic one victim, there was compelling evidence that Rivera and Randall collaborated and assisted in the trafficking of each.

The evidence as to each woman is chronicled in detail in the Court's decision denying Rivera's post-trial motions. *See* Dkt. 926 ("Rules 29/33 Decision"). In brief:

Perez lived with Rivera and Randall for four months, and engaged in sex acts multiple times daily at Randall's behest. Rivera accompanied Randall as a source of protection when Randall took Perez on "dates" in which she engaged in sex acts with customers. Rivera was present, and supported Randall, when Randall engaged in violence and threats of violence against Perez that caused her to engage in prostitution. To Perez, Randall described Rivera as "the shooter"—the person who would "handle it" if "something was happening." Rivera, Perez testified, always had a gun on him, and often brandished it, inspiring fear and submissiveness in her. In one dramatic incident when Perez's mother came to the Bohemia House in an effort to rescue and retrieve her daughter, Rivera stood outside and wielded a large firearm, with the evident intent to intimidate Perez and her mother. Later, Randall sent Perez intimidating text messages. On another occasion, Rivera, armed, stood watch outside a motel room while Randall viciously beat and strangled Perez.

Rodriguez, who was Rivera's second cousin, was lured by Rivera into prostitution, with promises of romance with him and money. She lived in the Bohemia House for several multi-week stretches, and, on many days, at Rivera's direction, went on multiple "dates" with customers. Rivera posted online advertisements for Rodriguez, decided which dates she would go on, and kept, or tried to keep, for himself the proceeds of Rodriguez's prostitution. Randall advised Rivera on how to maximize profits and control Rodriguez, with Randall telling him to "boss up" on, "dominate," and "be more assertive" to Rodriguez, including, if necessary, by hitting and physically harming her. Rivera acted in accord with this advice, abusing Rodriguez verbally and physically, leaving her with a black eye and fearful that if she stopped working for Rivera, he would again hurt her physically or come after her family. When Rodriguez disobeyed or angered Rivera, he pointed his gun at Rodriguez's head and waved it around while threatening to kill her.

### C. Sentencing

In advance of sentencing, Rivera's trial counsel lodged several objections, including to the Probation Department's calculation of the advisory Sentencing Guidelines range as between 360 months and life imprisonment. *See* Dkt. 964 at 9–14. Counsel also submitted a lengthy sentencing memorandum requesting leniency, including challenging the Guidelines calculation and making arguments for mitigation. *See generally id*. The Court adopted the Guidelines range as calculated by the Probation Department. But, giving weight to defense arguments in mitigation, the Court imposed a sentence principally of 252 months (21 years) imprisonment. Dkt. 978 ("Sent. Tr.") at 102. That sentence was below those recommended by the Guidelines (360 months to life), the Government (300 months), and the Probation Department (360 months). *See id*. at 18, 82.

**D. Appellate Proceedings**

On October 21, 2022, Cecutti timely filed a notice of appeal on Rivera's behalf. Dkt. 973. Tomao assumed the representation of Rivera before the Second Circuit, having been appointed pursuant to the CJA. On appeal, Tomao pressed several arguments. These included: that (1) the Court's evidentiary rulings—including admitting opinion testimony on "trauma bonding," limiting some cross-examination of Rodriguez on her past history of prostitution, and admitting evidence that Rodriguez had been kidnapped by others during the sex-trafficking conspiracy—had denied Rivera a fair trial; (2) there was insufficient evidence to support the verdict; (3) the sentence imposed was procedurally and substantively unreasonable; and (4) the Court erred in ordering Rivera to pay $86,000 in restitution. *See generally* Br. for Defendant-Appellant, *United States v. Rivera*, No. 22-2780 (2d Cir. June 30, 2023), Dkt. 61 ("2d Cir. Br.").

On June 4, 2024, the Second Circuit affirmed the conviction and sentence. Its summary order rejected each of the above arguments.

**E. Section 2255 Petition**

On December 30, 2025, Rivera filed a *pro se* petition under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence. Dkt. 1056 ("Pet."). On February 19, 2026, Rivera filed an unauthorized supplement to the petition. Dkt. 1060 ("Pet. Supp.") (together with Pet., the "petition"). For the most part, the petition argues that Rivera's trial and appellate counsel were ineffective because they purportedly (1) failed to argue that the Sentencing Guidelines calculation was incorrect and that the sentence imposed was unlawful, Pet. Supp. at 2; and (2) did not understand the "relevance of the [e]vidence" or "federal laws," Pet. at 15–16. The petition also claims that unspecified irrelevant evidence was admitted, denying Rivera his due process rights. *Id*. at 13. On January 6, 2026, the Court issued an order stating that, although there is "a substantial argument that Rivera's ineffective assistance claims are facially meritless,"

it was necessary, to evaluate these claims, to receive sworn testimonial statements from Cecutti and Tomao. Dkt. 1057 at 1. The Court notified Rivera that if he wished to proceed with these claims, he was required to execute a form authorizing his counsel to disclose confidential communications in response to a court order, but only to the extent necessary to shed light on the claims of ineffective assistance. *Id*. at 2. Rivera signed the authorization. Dkt. 1058.

On March 23, 2026, Tomao filed a declaration in response to Rivera's motion. Dkt. 1063 ("Tomao Decl."). On March 26, 2026, Cecutti likewise filed a declaration. Dkt. 1064 ("Cecutti Decl."). On April 20, 2026, the Government filed its opposition to Rivera's motion. Dkt. 1065 ("G. Mem."). On May 19, 2026, Rivera filed a reply. Dkt. 1066 ("Reply").

## II. Discussion

The Court first reviews the governing legal standards and then applies these to the claims in Rivera's petition.

### A. Applicable Legal Standards

#### 1. Section 2255 Motions

Section 2255 enables a prisoner sentenced by a federal court to petition that court to vacate, set aside, or correct a sentence "imposed in violation of the Constitution or laws of the United States" or "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Martinez-Guerrero*, No. 24 Cr. 154-6, 2026 WL 2664837, at *1 (S.D.N.Y. Sept. 10, 2026) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make

it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (cleaned up).

That said, "[i]t is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citations omitted). This "general rule . . . appl[ies] to *pro se* motions filed pursuant to section 2255." *Id.*

**2. Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel is a permissible basis for bringing a § 2255 petition. The Sixth Amendment guarantees a criminal defendant the right "to effective assistance from his attorney at all critical stages in the proceedings." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013); *see also Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014).

A defendant claiming ineffective assistance must establish that (1) his "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As to the first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess . . . strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). The court starts from a "strong presumption" that counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. That is because there are many ways to provide effective assistance, and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id*. at 689; *see also id*. ("Judicial scrutiny of

counsel's performance must be highly deferential."); *Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015).

With respect to the *Strickland*'s second prong, a defendant must show that he was prejudiced, *i.e.*, but for counsel's errors, there was a reasonable probability—a "probability sufficient to undermine confidence in the outcome"—that the outcome would have been different. *Bierenbaum v. Graham*, 607 F.3d 36, 51 (2d Cir. 2010) (quoting *Strickland*, 466 U.S. at 694). This requires the court to examine "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *United States v. Lopez*, No. 21 Civ. 2698 (PAE), 2023 WL 111784, at *3 (S.D.N.Y. Jan. 5, 2023) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).

**B. Application to Rivera's Petition**

Rivera's § 2255 petition is difficult to decipher. It recites three grounds for relief, beneath each of which he sets out ostensible "facts in support." The first ground reads:

> The Irrelevant Evidence Introduced, as it relates to the charge[,] so infected the Trial with Unfairness, as to render the Resulting Judgment of Conviction, or Resulting Sentence, or Both, A denial of the Fifth Amendment Due Process Clause of the U.S. Constitution, where the Petitioner Asks this Court to demonstrate in the First instance that it has conducted consideration [of] the Relevance of the Evidence Introduced, as it relates to the Charge.

Pet. at 13. The second ground reads:

> Petitioner suffered Ineffective assistance of counsel because Counsel was deficient and did not understand the federal laws as necessary to make a determination of the Precise Nature of the Government function involved as well as the Private Interest that has been affected by governmental action.
>
> Counsel's deficient performance facilitated a denial of due process, as it relates to the resulting conviction, or the resulting sentence, or both along with the current and ongoing imprisonment of Petitioner because Counsel neither understood the relevance of the Evidence Introduced, nor all the relevant federal laws, including the relevant contents of the Federal Register.

*Id*. at 15. The third ground reads:

> Petitioner suffered prejudice from Counsel[,] Ineffective Assistance of counsel and was deprived [of] his Statutory Right to appeal because Appellate Counsel did not understand the Federal Laws, including the Relevant contents of the federal Register. Therefore Petitioner was denied and deprived a meaningful appeal to the extent that Appellate Counsel did not understand the relevance of the Evidence Introduced, as it relates to the charge and the relevant contents of the Federal Register and did not understand the relevance of 28 C.F.R. PART 20.

*Id*. at 16.

The Court construes Rivera's first ground to challenge the Court's evidentiary rulings as to relevance; and the second and third grounds, as elaborated on in Rivera's reply, to challenge the performance of trial and appellate counsel. The Court addresses these in turn.

**1. Rivera's Claim of Irrelevant Trial Evidence**

Rivera's first ground for relief broadly claims that "irrelevant evidence" was introduced at his trial, that it related to the jury charge, and that it "infected the [t]rial with [u]nfairness." *Id*. at 13. This claim for relief is deficient for multiple reasons.

First, Rivera does not specify any particular evidence that was wrongly received at trial. Instead, in the "[f]acts [i]n [s]upport" that follow, Rivera makes a series of general requests that the Court "demonstrate" that it has considered various legal principles, with the most relevant here being that the Court "demonstrate in the first instance it has conducted consideration of the Relevance of the Evidence Introduced at Trial and at Sentencing," and demonstrate "the Relevance of the Evidence Introduced, as it relates to the Sentencing Factor(s)." *Id*. at 14.

Second, to the extent this ground concerns Rivera's sentencing, no evidence was "introduced" at the sentencing. The Court instead relied upon the factual content of the Presentence Report, as to which Rivera does not state any objection, and the trial evidence, as to which, again, Rivera does not identify any item improperly received. *See* Sent. Tr. at 3–4.

Third, even if Rivera had presented a coherent claim of wrongly admitted evidence, that claim is an improper subject for a § 2255 petition. A § 2255 petition generally "cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" *United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009) (quoting *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001)); *see also Mui v. United States*, 614 F.3d at 53 ("[T]he so-called mandate rule bars re-litigation of issues already decided on direct appeal."). On direct appeal, Rivera's counsel vigorously challenged various evidentiary rulings of the Court, including with respect to its receipt of expert testimony as to trauma bonding the limits it put on cross-examination of Rodriguez. *See* 2d Cir. Br. at 26–43. To the extent Rivera means to reiterate those claims, they are barred. And to the extent Rivera has in mind other challenges, a § 2255 petition generally cannot re-litigate issues that could have been raised on direct appeal, but were not. *See United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011) ("In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal."); *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007). To raise such a claim, the defendant "must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error," *Mui*, 614 F.3d at 54, or that he is "actually innocent," *Bousley v. United States*, 523 U.S. 614, 622 (1998). Rivera has shown nothing of the sort.

**2. Rivera's Claims of Ineffective Assistance**

The Court, like the Government, construes Rivera to attack his counsel's performance in several respects. *See* G. Mem. at 4–6.

First, Rivera claims his trial counsel were ineffective at sentencing. He argues that they "fail[ed] to argue that . . . guideline provisions tied to § 1591(b)(1) could not lawfully apply to a conspiracy only verdict." Pet. Supp. at 2. In fact, trial counsel made that very argument at

length in their sentencing memo, *see* Dkt. 964 at 9–10, and Cecutti reiterated it at sentencing, *see* Sent. Tr. at 11–16. And appellate counsel Tomao pressed the same argument on appeal, in both his opening and reply briefs. *See* 2d Cir. Br. at 57–63; No. 22-2780, Dkt. 101 at 12–13. Rivera does not critique the quality of those arguments, and for good reason. Although they failed to carry the day, they were forceful, clear, and complete.[3]

As to Rivera's claim that his counsel at sentencing "fail[ed] to argue . . . [that] § 1594(c) does not independently authorize § 1591(b) penalties absent jury findings," or that the sentence the Court imposed "exceeded statutory authorization," Pet. Supp. at 2, these arguments are legally misbegotten, such that counsel cannot be faulted for not making them. Section 1591(b) imposes mandatory minimum sentences for particular manifestations of the substance offense of sex trafficking: 15 years, if the offense "was effected by means of force, threats of force, fraud, or coercion," or involved minors under age 14, 18 U.S.C. § 1591(b)(1); and 10 years, if it involved minors between ages 14 and 18, *see id*. § 1591(b)(2). But Rivera was not convicted of (or charged with) that offense. He was charged with conspiracy to violate § 1591(b), in violation of 18 U.S.C. § 1594(c), an offense which does not carry a mandatory minimum. And the Presentence Report, in tabulating the sentences that were statutorily available, did not identify any mandatory minimum sentence as applicable. *See* Dkt. 951 at 49. And the Court, in imposing sentence, at no point stated that a mandatory minimum applied. *See, e.g.*, Sent. Tr. at 27–28. And the sentence imposed was authorized by § 1594(c), which authorizes a sentence of up to life imprisonment. *See* 18 U.S.C. § 1594(c). Rivera's argument thus fails, because "[f]ailure to make a meritless argument does not amount to ineffective assistance." *Adamson v.*

---

[3] To the extent this argument relitigates arguments rejected by the Second Circuit, this attempt is also barred, because a § 2255 motion may not "relitigate questions which were raised and considered on direct appeal." *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007).

*United States*, No. 19 Cr. 702-1, 2025 WL 2577747, at *10 (S.D.N.Y. Sept. 4, 2025) (quoting *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999)).

Second, Rivera attacks the competence of his counsel. He claims that his trial counsel lacked an understanding of "the relevance of the Evidence Introduced" and "all the relevant [f]ederal [l]aws," and that appellate counsel similarly "did not understand the Federal Laws" or "the relevance of the Evidence Introduced." Pet. at 15–16. These assertions are entirely unspecific. For that reason alone, they cannot sustain a § 2255 challenge. *See, e.g.*, *United States v. Ramsey*, No. 15 Cr. 525, 2026 WL 1091333, at *3 (E.D.N.Y. Apr. 22, 2026) ("[a]iry generalities" and "conclusory assertions" "will not suffice" to prevail on § 2255 petition) (citation omitted); *United States v. FNU LNU*, No. 6 Cr. 172, 2015 WL 5178438, at *5 (S.D.N.Y. Sept. 4, 2015) ("generalized assertions are insufficient" to challenge assistance of counsel through § 2255 petition); *cf. Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (affirming denial of § 2255 petition on the papers where petitioner's "proffer involved a generic claim" based on "improbable assertions").

Beyond that, Rivera's demeaning of his counsel is not only wrong but extravagantly so. This Court personally bore witness to the lawyering of Cecutti and his trial team. It was superb, a point the Court noted in its ruling on Rivera's post-trial motions, *see* Rules 29/33 Decision at 17 ("Rivera had the benefit, pretrial and during trial, of an exceptional three-person team of talented, dedicated, energetic, and laudable counsel"), and at sentencing, at which the Court referred to the defense memorandum, which documented Rivera's history of terrible trauma, as "a truly extraordinary sentencing submission in all respects," Sent. Tr. at 63, and as "remarkably thorough and perceptive," *id.* at 87. The Court reiterates those encomiums today. Counsel vigorously defended Rivera at trial, and, in the face of a high degree of difficulty, put him in as

good a position as possible to prevail at trial. And, the Court can attest, counsel's sentencing advocacy was significantly responsible for Rivera's well-below-Guidelines sentence. As for appellate counsel, his opening and reply briefs on appeal were forceful and comprehensive. Although unsuccessful, they identified and pressed the most colorable claims available.

Finally, counsel's sworn statements as to their qualifications and experience, and their efforts and strategy in this case, contradict Rivera's loose and convenient condemnations. Cecutti's declaration recounts his team's extensive pretrial preparation, trial work, post-trial motions and sentencing advocacy. Cecutti Decl. ¶¶ 6–7. In response to Rivera's claim that he "did not understand the federal laws," he recounts his relevant experience and credentials, which are formidable, including longtime service on the CJA panels in this District and the Eastern District. *Id.* ¶ 8. And he refutes, correctly, Rivera's errant legal arguments, such as about the § 1591(b) penalties and that his sentence was outside statutory authorization. *Id.* ¶¶ 9–12.

Tomao, for his part, recounts his "almost constant contact" with Rivera during the representation, which included approximately 50 letters, numerous emails and, to the extent achievable given Rivera's custody, "legal" telephone calls. Tomao Decl. ¶ 3. He attests that Rivera actively participated in the appeal and sent him detailed comments, *id.* ¶ 4, and never "expressed any negative criticism of [Tomao's] representation of him," *id.* ¶ 6. He recounts the arguments he made on appeal, including as to the base offense level for convictions for violations of § 1594(c), *id.* ¶¶ 8, 12. And, responding to Rivera, he explains why the mandatory minimum provisions of § 1591(b) had no bearing on his case. *Id.* ¶ 13. Tomao recounts his relevant experience and credentials, which, like Cecutti's, are formidable, including handling more than 100 criminal appeals. *Id.* ¶ 10.

**3. Hearing**

"In ruling on a motion under § 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez*, 722 F.3d at 130 (quoting 28 U.S.C. § 2255). But "the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are 'vague, conclusory, or palpably incredible.'" *Id*. at 130–31 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

Instead, "[t]o warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Id*. at 131. "[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Sinclair v. United States*, No. 23 Cr. 503, 2026 WL 607856, at *10 (S.D.N.Y. Mar. 3, 2026) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); *see also Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) ("bald allegations unsupported by evidentiary facts do not" require hearing (cleaned up)); *Chang*, 250 F.3d at 86 (court may "expand the record without conducting a full-blown testimonial hearing" through the use of affidavits).

A hearing is not necessary here because Rivera's vague claims of ineffective assistance are deficient on their face as a basis for relief. And the Court's extended experience with this case supplies it with the information needed to decide Rivera's claims. The Court therefore denies Rivera's petition without a hearing. *See, e.g.*, *United States v. Agramonte-Minaya*, No. 21 Cr. 661 (PAE), 2025 WL 856204, at *7 (S.D.N.Y. Mar. 19, 2025) (evidentiary hearing not warranted where defendant's claims were "either conclusory, belied by the record, and/or insufficient (even if proven true) as a matter of law to secure relief"); *Rosa v. United States*, 170

F. Supp. 2d 388, 399 (S.D.N.Y. 2001) (same, where some of defendant's claims were made "broadly and conclusorily," and for other claims, the documentary record "suppl[ied] the necessary basis for the Court's decision"); *United States v. Ellison*, No. 18 Cr. 834-9 (PAE), 2024 WL 1406650, at *4 (S.D.N.Y. Apr. 2, 2024) ("Ellison's claim of ineffective assistance of counsel is easily put aside based on the trial record, with no need or basis for an evidentiary hearing."); *United States v. Rivera*, No. 15 Cr. 722 (PAE), 2022 WL 17090867, at *2 n.2 (S.D.N.Y. Nov. 21, 2022) ("[T]he Court finds that the parties' filings and the case record conclusively show that Rivera is not entitled to the relief sought and thus declines to hold a hearing.").

## CONCLUSION

For the reasons above, the Court denies Rivera's motion for relief pursuant to 28 U.S.C. § 2255 as meritless. Rivera has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. *See* 28 U.S.C. § 2253(c)(2); *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). The Court also certifies that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 1056 and the docket of 25 Civ. 10823.

SO ORDERED.

Paul A. Engelmayer

Paul A. Engelmayer
United States District Judge

Dated: October 13, 2026
New York, New York